# EXHIBIT 1

ELECTRONICALLY FILED
8/31/2016 11:38 AM
2016-CH-11519
CALENDAR: 06
PAGE 1 of 15
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| RICHARD O'HERN, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| *v.* | **JURY TRIAL DEMANDED** |
| CVS PHARMACY, INC., a Rhode Island corporation, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Richard O'Hern brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant CVS Pharmacy, Inc., to stop its automated telemarketing robocalls and obtain redress for those injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by his attorneys:

### NATURE OF THE ACTION

1.      This case arises under the Telephone Consumer Protection Act ("TCPA")—a strong consumer protection statute, administered by the Federal Communications Commission ("FCC"), that broadly prohibits businesses from sending automated robocalls to cellphone users without first having their prior express consent. These widespread machine-driven calls "can be an intrusive invasion of privacy and, when an emergency or medical assistance telephone line is seized, a risk to public safety."[1] *See* 47 U.S.C. § 227.

---

[1]      TELEPHONE CONSUMER PROTECTION ACT OF 1991, PL 102–243, December 20, 1991, 105 Stat 2394 § 2(5).

2.     Defendant CVS implicates these twin concerns—privacy and safety—by placing repeated and unwanted robocalls to consumers, month after month, without consent and often despite express do-not-call instructions to the contrary. Customers who have been unable to get CVS to stop are often resigned to just ignoring, blocking, or otherwise dodging its robocalls.

3.     But because CVS is a pharmacy, this leads to real health risks. As one employee lamented: "Try finding the right phone numbers because the bulk of people on the [calling] lists chose not to give their preferred number because they were tired of CVS calling all the time. Now try reaching a patient at that number when a potentially fatal misfill has occurred." *See* Figure 1, below.

ELECTRONICALLY FILED
8/31/2016 11:38 AM
2016-CH-11519
PAGE 2 of 15

First try getting patients on those call lists to "adhere" to Nasonex, Flonase, Allegra, Clarinex, etc. Try reaching the 85% goal that your DM has set so that he can position himself for a promotion. Try contacting a deceased patient whose name popped up on the list. Try finding right phone numbers because the bulk of people on the lists chose not to give their preferred number because they were tired of CVS calling all the time. Now try reaching a patient at that number when a potentially fatal misfill has occured.

**(Figure 1.)**

4.     Moreover, CVS even applies its robocalling campaigns to pharmacy consumers who never gave it their phone numbers in the first place. For instance, through its recent purchase of the pharmacy locations previously owned and operated by the Target Corporation, CVS acquired the phone numbers and contact information for millions of former Target pharmacy customers, without their knowledge or consent.

5.     These former Target customers did not tell CVS that it could start autodialing their private cellphones with prerecorded robocalls. To the contrary, many—like Plaintiff—had longstanding do-not-call instructions on file with Target. They fully expected their do-not-call instructions would be honored indefinitely, regardless of the name on the pharmacy doors.

6.     Unfortunately, after acquiring Target's pharmacy operations, CVS has largely ignored those consumers' do-not-call instructions, and has instead automatically enrolled them into its prerecorded reminder-call programs anyway, despite its lack of consent. Accordingly,

2

CVS routinely violates the TCPA by autodialing the cellular telephones of former Target customers, and by playing prerecorded or artificial voice messages to them, without their prior express consent and despite their do-not-call instructions.

ELECTRONICALLY FILED
8/31/2016 11:38 AM
2016-CH-11519
PAGE 3 of 15

7.      Consumers should not have to choose between their privacy and their safety, as the TCPA entitles them to both. Here, Defendant's TCPA violations have caused Plaintiff and two classes of similarly situated individuals (the "Classes," defined below) actual harm, including the violation of their statutory rights, the loss of minutes from their cellular plans, the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unwanted phone calls, and the increased risk of ignoring actual emergency calls—such as for recalls or misfills—that their pharmacy might some day need to place.

8.      In response to Defendant's unlawful conduct, Plaintiff brings the instant lawsuit and seeks an injunction requiring it to cease all unsolicited phone call activities as well as an award of statutory damages, costs, and reasonable attorneys' fees.

## PARTIES

9.      Plaintiff Richard O'Hern is a natural person and a resident of Chicago, Illinois.

10.     Defendant CVS Pharmacy, Inc., is a corporation organized and existing under the laws of the State of Rhode Island with its principal place of business located at One CVS Drive, Woonsocket, Rhode Island 02895. CVS has retail locations throughout Cook County and it regularly does business throughout Cook County and the State of Illinois.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209(a) because Defendant maintains real property in the State of Illinois and regularly transacts business

3

within the State of Illinois. Defendant also routinely places automated and prerecorded telephone calls (including the pharmacy calls complained of herein) to the residents of the State of Illinois.

12.     Venue is proper in Cook County because CVS regularly conducts business within Cook County, maintains real estate within Cook County, and directs automated and prerecorded calls to residents of Cook County. Moreover, venue is proper in Cook County because Plaintiff resides in Cook County and because the injuries complained of herein were suffered by Plaintiff while he was within Cook County.

## COMMON FACTUAL ALLEGATIONS

13.     CVS is the largest drugstore chain in the United States, with more than 70 millions consumers at more than 9,500 retail stores across the country.

14.     To efficiently market to these consumers, CVS routinely sends out millions of automated, prerecorded telephone calls "reminding" them to come into its stores and buy its medicines (along with whatever other items they might find on the shelves). If it can drive a fraction of these consumers into its retail stores, it stands to benefit from their drug purchases as well as whatever other convenience items they might happen to pick up while in-store, all while its competitors lose out on the same sales.

15.     Accordingly, CVS makes robocalls incessantly, month after month, using computers with the capacity to machine-dial telephone numbers, in bulk, directly from stored lists and without active human intervention.

16.     Many of these calls are mere "reminder" or "adherence" calls that encourage consumers to take their medicines and—of course—to purchase refills at CVS instead of at other pharmacies. Many consumers, however, are on regular prescription schedules, and are fully able

ELECTRONICALLY FILED
8/31/2016 11:38 AM
2016-CH-11519
PAGE 4 of 15

4

to observe the dates on their own calendars and the contents of their own prescription bottles.

These consumers do not wish to be badgered, month after month, into shopping at CVS.

17.     Indeed, CVS is notorious for its aggressive use of automated and prerecorded

calling technologies, causing countless consumer complaints:

ELECTRONICALLY FILED
8/31/2016 11:38 AM
2016-CH-11519
PAGE 5 of 15

- "I received calls every 2-4 days. I did not opt-in to any sort of calls from CVS."[2]

- "I have finally had enough of CVS's telephone calls and other annoying marketing tactics. . . A simple Google search reveals that I am not the only one sick and tired of what they are doing. How can a company be so shortsighted that it annoys its customers to death?"[3]

- "CVS – What's up with the robocalls? My mother is being incessantly harassed with a message to pick up a prescription that was picked up 3 weeks ago. Store employees throw up their hands and say 'yeah, lots of people are annoyed. There's nothing we can do.' Seriously?"[4]

- "CVS seems to believe that they can annoy customers into purchasing more drugs."[5]

- "I recommend adding an extra line to your cellular service. You can usually get a free phone when you add a line. Make this your 'CVS phone.' Give CVS the number and set it to silent. You can check the voicemail and missed calls a couple of times per month and you won't be bothered constantly on your regular phone lines. It is worth the extra $30 or so per month to avoid the extra hundreds of phone calls."[6]

18.     Moreover, while many individuals voluntarily choose to do business with CVS,

others become connected to CVS involuntarily, solely through CVS's own business acquisitions.

---

[2]     Consumerist, *How I Made the CVS Robocalls Stop for Now*, available at ttps:/consumerist.com/2012/10/02/how-i-made-the-cvs-robocalls-stop-for-now (last accessed August 15, 2016).

[3]     Burkey Academy, *Stop Calling Me CVS*, available at http://burkeyacademy .blogspot.com/2012/08/stop-calling-me-cvs.html (last accessed August 15, 2016).

[4]     Facebook, *CVS Pharmacy*, https://www.facebook.com/CVS/posts/10151758141988116 (last accessed August 15, 2016).

[5]     Consumerist, *I Do Not Appreciate Your Drug Pushing Calls CVS*, available at https://consumerist .com/2010/10/27/i-do-not-appreciate-your-drug-pushing-calls-cvs (last accessed August 15, 2016).

[6]     Reddit, *Stopping CVS PCQ Phone Calls*, available at https://www.reddit.com/r/pharmacy/ comments/3wdkg4/stopping_cvs_pcq_phone_calls (last accessed August 15, 2016).

5

These individuals become subject to CVS's automated and prerecorded calling campaigns

without ever providing it with their telephone numbers or prior express consent.

19.    For example, in December of 2015, CVS purchased all of the Target Corporation's pharmacy and clinic businesses for approximately $1.9 billion. This gave CVS control over an additional 1,672 pharmacies across 47 states. This acquisition also gave CVS access to the contact information for millions of former Target customers.

20.    None of these former Target consumers gave advance consent for CVS to purchase Target's pharmacies, much less their prior express consent for CVS to lift their contact information from Target's systems and start autodialing and robocalling their cellular telephones. To the contrary, many former Target customers, like Plaintiff, had given specific instructions to *never* place unwanted pharmacy telephone calls to their cellular telephone numbers.

21.    When CVS purchased Target's pharmacies, it acquired the do-not-call instructions that former Target customers had given, and it imported these instructions into its own systems. As a result, it was fully aware of which customers had specifically forbidden automated and prerecorded pharmacy calls. Nonetheless, it auto-enrolled these former Target customers into its automated and prerecorded calling programs anyway, without regard to their specific instructions to the contrary.

22.    As a result, CVS has repeatedly used automatic telephone dialing equipment to place unwanted automated telephone calls, featuring artificial and prerecorded voices, to the cellular telephone numbers of individuals who had specifically informed it not to call, without their consent and in willful violation of the TCPA.

23.    Many of these consumers are charged money or otherwise lose cellular minutes in order to receive such calls, even if they have given CVS specific instructions not to call.

ELECTRONICALLY FILED
8/31/2016 11:38 AM
2016-CH-11519
PAGE 6 of 15

Effectively, CVS has forced these consumers to pay for the privilege of receiving prescription

refill advertisements, whether they want to or not.

24.     The TCPA was intended to give individuals control over how and where they

receive commercial telephone calls, yet CVS ignores the express do-not-call instructions of

thousands of consumers, violating both the spirit and the letter of the TCPA.

## FACTS SPECIFIC TO PLAINTIFF O'HERN

25.     Plaintiff O'Hern subscribes to and uses a private cellular telephone number, (773)

***-9145.[7] Plaintiff has been the exclusive user of this telephone number since approximately

2010. His current cellular service plan is limited to 1,000 voice minutes per month.

26.     Plaintiff also takes prescription medications on regular, consistent schedules. He

knows, both by date and by count, when he needs refills, and is entirely capable of managing his

own medication schedules and of deciding for himself where to shop. Plaintiff does not have any

need or desire to receive or pay for automated pharmacy calls that interrupt his day and consume

his limited cellular telephone minutes.

27.     Years ago, Plaintiff started shopping from Target's pharmacy, in part because it

did not insist on regularly calling him. Plaintiff specifically instructed Target to never call his

cellular telephone number, and Target respected his request. Target marked Plaintiff's account

with do-not-call instructions and never sent him prescription telemarketing calls.

28.     In December of 2015, CVS purchased all of Target's pharmacy operations,

including the retail pharmacy location frequented by Plaintiff. Through this purchase, CVS

acquired contact information for former Target pharmacy customers, as well as any do-not-call

instructions applicable to these former customers, including Plaintiff. As such, CVS received and

was aware that Plaintiff had specific do-not-call instructions on file.

---

[7]     Plaintiff's unredacted telephone number can be made available to Defendant through discovery.

ELECTRONICALLY FILED
8/31/2016 11:38 AM
2016-CH-11519
PAGE 7 of 15

29.    Nonetheless, CVS began sending automated and prerecorded calls to Plaintiff's private cellular telephone, without his prior express consent and despite his specific instructions to the contrary.

30.    At a minimum, CVS called Plaintiff at the following times from the following telephone number:

| Date | Time | CVS Number | Artificial / Prerecorded Voice? |
|---|---|---|---|
| April 4, 2016 | 4:46 PM | (773) 604-7681 | Yes |
| April 18, 2016 | 1:26 PM | (773) 604-7681 | Yes |
| May 2, 2016 | 9:36 AM | (773) 604-7681 | Yes |
| May 15, 2016 | 5:01 PM | (773) 604-7681 | Yes |

**(Figure 2.)**

ELECTRONICALLY FILED
8/31/2016 11:38 AM
2016-CH-11519
PAGE 8 of 15

31.    When Plaintiff answered these calls, he would be connected, after a brief pause, to artificial or prerecorded voice messages. These calls would consume minutes from his limited cellular telephone plan.

32.    Most of these calls were automated sales calls that were intended to badger Plaintiff into purchasing his prescriptions from CVS as opposed to some other pharmacy. None of these calls were for any sort of emergency, and none allowed for automated opt-outs through key-press or interactive voice commands.

33.    Plaintiff did not want or need these prerecorded telephone calls, so he traveled, in person, to the retail store that kept calling him: CVS Pharmacy #16771, located at 2939 West Addison Street, Chicago, Illinois 60618. Plaintiff told the employees there to stop calling his cellular telephone.

34.    While there, the CVS employees showed Plaintiff that he was already in CVS's system with the do-not-call instructions that he had previously given to Target. They pointed to a line in his account file which had a checkbox selected that specifically indicated he was not to receive unnecessary calls.

8

35.     The CVS employees further told Plaintiff that there was nothing further they could do, and instructed him to "call corporate" himself to end the calls. When Plaintiff asked for the right telephone number to "call corporate," the CVS employees were unable to provide it to him.

36.     After Plaintiff's visit, not only did CVS continue calling, it doubled the frequency. *See, e.g.*, Figure 3, below.

| Date | Time | CVS Number | Artificial / Prerecorded Voice? |
|------|------|------------|--------------------------------|
| May 23, 2016 | 9:13 AM | (773) 604-7681 | Yes |
| May 23, 2016 | 5:07 PM | (773) 604-7681 | Yes |
| May 28, 2016 | 10:05 AM | (773) 604-7681 | Yes |
| May 28, 2016 | 5:02 PM | (773) 604-7681 | Yes |
| June 29, 2016 | 9:06 AM | (773) 604-7681 | Yes |
| June 29, 2016 | 5:03 PM | (773) 604-7681 | Yes |

**(Figure 3.)**

ELECTRONICALLY FILED
8/31/2016 11:38 AM
2016-CH-11519
PAGE 9 of 15

37.     CVS has even called Plaintiff to "remind" him about prescriptions that he has already picked up. For instance, on June 29, 2016, at 9:06 a.m., CVS sent Plaintiff an automated call featuring a prerecorded or artificial voice "reminding" him to get his prescriptions. He picked these prescriptions up that same day, at 4:36 p.m., yet at 5:03 p.m. that evening CVS called again, only to "remind" Plaintiff once more about the prescriptions he already picked up.

38.     Additionally, some CVS calls expose Plaintiff's private health information. For instance, Plaintiff received a call at 10:07 a.m. on Saturday, July 30, 2016, where CVS's automated system needlessly recited, by name and dosage, the exact medication that was due for a refill. Further, CVS disclosed Plaintiff's name during the call, and all it required for further verification was Plaintiff's birth date. As such, any person who received or intercepted that call and who knew (or was able to look up) Plaintiff's birth date would have been able to discover his exact prescription and dosage schedule (and, by extension, his probable medical condition).

39.     Plaintiff does not need or want these reminder calls from CVS.

9

40.     Plaintiff has never provided his cellular telephone number to CVS and has never given it express consent to call his cellphone.

41.     At all relevant times, CVS knew it was using an automatic telephone dialing system to call Plaintiff's cellular telephone with artificial or prerecorded voice messages, and it knew it was doing so without express consent and despite instructions to the contrary.

## CLASS ALLEGATIONS

42.     Plaintiff brings this action pursuant to 735 ILCS 5/2-801 on behalf of himself, two classes, and a subclasses of similarly situated individuals (collectively, the "Classes") defined as follows:

ELECTRONICALLY FILED
8/31/2016 11:38 AM
2016-CH-11519
PAGE 10 of 15

> **Autodialer Class**: All individuals in the United States who: (1) received a prescription "reminder" call sent by or on behalf of CVS; (2) at a cellular telephone number that CVS obtained only through its purchase of Target Corporation's pharmacies; (3) that was placed using computerized dialing equipment; and (4) where Target Corporation had do-not-call instructions for that number.

> **Robocall Class**: All individuals in the United States who: (1) received a prescription "reminder" call sent by or on behalf of CVS; (2) at a cellular telephone number that CVS obtained only through its purchase of Target Corporation's pharmacies; (3) that featured a prerecorded or artificial voice; and (4) where Target Corporation had do-not-call instructions for that number.

The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

10

43. **Numerosity**: The exact number of members within each of the Classes is

unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed telephone calls to thousands of consumers who fall into each of the definitions of the Classes. Members of the Classes can be identified through Defendant's records.

44. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

**The Autodialer Class**:

ELECTRONICALLY FILED
8/31/2016 11:38 AM
2016-CH-11519
PAGE 11 of 15

    (a)    Whether Defendant had the Autodialer Class members' prior express consent to call their cellphones;

    (b)    Whether Defendant used an automatic telephone dialing system to call the Autodialer Class members' cellphones;

    (c)    Whether Defendant's conduct violated the TCPA;

    (d)    Whether Plaintiff and the members of the Autodialer Class are entitled to treble statutory damages based on the willfulness of Defendant's conduct.

**The Robocall Class**:

    (a)    Whether Defendant had the Robocall Class members' prior express consent to call their cellphones;

    (b)    Whether Defendant's telephone calls featured artificial or pre-recorded voices;

    (c)    Whether Defendant's conduct violated the TCPA;

treble statutory damages based on the willfulness of Defendant's conduct.

45.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

46.    **Appropriateness:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and because joinder of all members of the Classes is impracticable. The damages suffered by the individual members of the Classes are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

ELECTRONICALLY FILED
8/31/2016 11:38 AM
2016-CH-11519
PAGE 12 of 15

### FIRST CAUSE OF ACTION
**Violation of 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Autodialer Class)**

47.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

48.    Defendant initiated telephone calls to cellular telephones belonging to Plaintiff and the members of the Autodialer Class without having their prior express consent.

12

49.     Defendant initiated these calls using equipment having the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or to receive and store lists of phone numbers, and to dial such numbers, *en masse*, simultaneously and without active human intervention.

50.     By placing telephone calls to the cellular telephones belonging to Plaintiff and the members of the Autodialer Class without having their prior express consent, and by doing so using equipment with the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or to receive and store lists of phone numbers, and to dial such numbers, *en masse*, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

51.     As a result of Defendant's conduct, Plaintiff and the members of the Autodialer Class suffered invasions of privacy, statutory violations, and actual damages in the form of any monies paid and value lost to receive the telephone calls on their cellular phones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

52.     Moreover, because Defendant's misconduct was willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), award Plaintiff and the members of the Autodialer Class treble their statutory damages, equal to $1,500 per unlawful call.

**SECOND CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Robocall Class)**

53.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

54.     Defendant placed telephone calls to cellular telephones belonging to Plaintiff and the members of the Robocall Class without having their prior express consent.

55.     These calls featured artificial or prerecorded voices.

13

ELECTRONICALLY FILED
8/31/2016 11:38 AM
2016-CH-11519
PAGE 13 of 15

56.     By placing calls featuring artificial or prerecorded voices to cellular telephones belonging to Plaintiff and the members of the Robocall Class, without having their prior express consent, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

57.     As a result of Defendant's conduct, Plaintiff and the members of the Robocall Class suffered invasions of privacy, statutory violations, and actual damages in the form of any monies paid and value lost to receive the telephone calls on their cellular phones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

58.     Moreover, because Defendant's misconduct was willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), award Plaintiff and the members of the Robocall Class treble their statutory damages, equal to $1,500 per unlawful call.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Richard O'Hern, individually and on behalf of the Classes, prays for the following relief:

A.     An order certifying the Classes as defined above, appointing Plaintiff Richard O'Hern as representative of the Classes, and appointing his counsel as Class Counsel;

B.     An order declaring that Defendant's actions, as set out above, violate the TCPA;

C.     An order requiring Defendant to permanently cease-and-desist from all unlawful conduct as alleged herein, and otherwise protecting the interests of the Classes;

D.     An award of actual and statutory damages;

E.     An award of reasonable attorneys' fees and costs; and

F.     Such other and further relief that the Court deems reasonable and just.

ELECTRONICALLY FILED
8/31/2016 11:38 AM
2016-CH-11519
PAGE 14 of 15

14

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: August 31, 2016

**RICHARD O'HERN**, individually and on behalf
of all others similarly situated,

By: /s/ Benjamin H. Richman
     One of Plaintiff's Attorneys

Benjamin H. Richman
brichman@edelson.com
Elizabeth A. Winkowski
ewinkowski@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Firm ID: 44146

ELECTRONICALLY FILED
8/31/2016 11:38 AM
2016-CH-11519
PAGE 15 of 15

15